UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**GEORGE MANSOUR, M.D.**; and
**GEORGE MANSOUR, M.D., P.A.**,

    Plaintiffs,

v.                                                                                                Case No. 8:22-cv-595-WFJ-AEP

**FREEDOM HEALTH, INC.**; and
**PHYSICIAN PARTNERS, LLC**,

    Defendants.
_____/

## ORDER

Before the Court is Physician Partners, LLC's ("PPC") Motion to Compel Arbitration (Dkt. 111). George Mansour, M.D. ("Dr. Mansour") and George Mansour, M.D., P.A. ("Mansour, P.A.") (collectively, "Plaintiffs") have responded in opposition (Dkt. 116). PPC has replied (Dkt. 119). Upon careful consideration, the Court grants PPC's Motion and stays proceedings in this case as to Count IV of Plaintiff's Second Amended Complaint (Dkt. 110).

### BACKGROUND

As the Court explained in its previous Order (Dkt. 93) denying Defendants' Motions to Dismiss (Dkt. 36; Dkt. 37), the instant case arises from a failed quasi-employment relationship between Plaintiffs and Defendants. Plaintiffs allege that, while Dr. Mansour was working as a physician for PPC, Defendants conspired to

artificially increase the risk-adjustment scores of Freedom Health Inc.'s ("Freedom") Medicare Advantage enrollees. Dkt. 110 at 12. Plaintiffs further claim that, upon learning of Dr. Mansour's refusal to "play ball," Defendants orchestrated a scheme to retaliate against him while retaining his patients. *Id.* at 42.

Following the aforementioned Order, Plaintiffs sought leave to file a second amended complaint which included a new breach of contract claim against PPC. Dkt. 105 at 5. Plaintiffs elaborated that the new contract claim arises from the same Physician Affiliate Agreement (the "Agreement") discussed in the Amended Complaint (Dkt. 23) as well as the same reassignment of Dr. Mansour's former patients. *Id.* at 5. Defendants did not object. Dkt. 107 at 1; Dkt. 108 at 1. The Court consequently granted Plaintiffs' request on January 1, 2024. Dkt. 109.

Two days later, Plaintiffs filed their Second Amended Complaint. Dkt. 110. The factual contentions asserted therein largely mirror those made in Plaintiffs' Amended Complaint. *Compare* Dkt. 110, *with* Dkt. 23. Plaintiff nevertheless brings two claims against PPC instead of one: Count I—unlawful retaliation under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h); and Count IV—breach of contract under Florida common law. Dkt. 110 at 53–54, 58–59.

On January 16, 2024, PPC moved to compel arbitration of Plaintiffs' new breach of contract claim pursuant to the Agreement's arbitration clause. Dkt. 111. Plaintiffs respond that PPC has waived its right to compel arbitration of this claim

2

by participating in motion practice related to the unlawful retaliation claim asserted in Plaintiffs' Amended Complaint. Dkt. 116.

## LEGAL STANDARD

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of arbitration agreements." *Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a likely defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *1 (M.D. Fla. Nov. 12, 2019) (stating that "[a] strong policy exists in favor of resolving disputes by arbitration").

The Court considers the following factors in determining whether to compel arbitration: "1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived." *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008

WL 686222, at *4 (M.D. Fla. Mar. 10, 2008) (citations omitted). "[T]he Court may consider matters outside the four corners of the complaint" in ruling on these issues. *KWEST Commc'ns, Inc. v. United Cellular Wireless Inc.*, No. 16-20242-CIV, 2016 WL 10859787, at *5 (S.D. Fla. Apr. 7, 2016), *report and recommendation adopted*, No. 16-20242-CIV, 2016 WL 10870449 (S.D. Fla. June 28, 2016). And, when deciding whether the parties have agreed to arbitrate certain matters, the Court generally applies state law principles governing contract formation. *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (citation omitted).

## DISCUSSION

In the instant case, Plaintiffs do not dispute the validity of the Agreement or the fact that Count IV is technically arbitrable. *See generally* Dkt. 116. This makes sense for obvious reasons. Plaintiffs' breach of contract claim is based on the Agreement and the Agreement provides that:

> Any dispute relating to this Agreement shall be settled exclusively by binding arbitration in Sarasota County, Florida by a single arbitrator, chosen from a panel of licensed attorneys having at least ten years of managed care-related experience, pursuant to the American Health Lawyers Association's Dispute Resolution Rules then in effect. Judgment upon the award rendered by the arbitrator may be entered in any court of competent jurisdiction and enforced accordingly. The arbitrator may grant injunctive relief in a form similar to that which a court of law would otherwise grant. The arbitrator shall be bound by applicable law and shall not award exemplary or punitive damages. Discovery shall be permitted in accordance with the Federal Rules of Civil Procedure. The cost of any arbitration shall be borne equally by

4

>both parties and the parties shall each bear their respective legal and related fees. This Section 6 shall survive the termination of this Agreement.

Dkt. 110-1 at 2. The only question, then, is whether PPC has waived its right to compel arbitration of Count IV under the Agreement by participating in motion practice related to Count I.

*Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256 (11th Cir. 2016) answers this question. There, the plaintiff brought a collective action under the Fair Labor Standards Act alleging that a defendant failed to pay overtime. *Collado*, 820 F.3d at 1258. The defendant waived its right to compel arbitration of this federal claim, "but when [the plaintiff] amended his complaint to add state law claims for breach of contract and quantum meruit, [the defendant] moved to compel arbitration as to those new claims." *Id.* The district court denied the motion to compel because "the addition of the state law claims did not unexpectedly change the scope or theory of the litigation" and "fairness did not compel reviving [the defendant's] right to elect arbitration." *Id.* at 1258–59.

The Eleventh Circuit reversed. After distinguishing a prior case that focused on a change in the scope of litigation,[1] the court explained that:

---

[1] *See Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1203–04 (11th Cir. 2011) (finding a revival of arbitration rights where the "new class definition in the Amended Complaint . . . greatly broadened the potential scope of [the] litigation by opening the door to thousands" of new class plaintiffs).

5

> [t]he change wrought by the amendment in this case was not in the number of plaintiffs but in the type of claim asserted. The case began as one asserting a federal claim. Only after [defendant] had waived by litigation its right to arbitrate that claim did [plaintiff] file the amendment changing the case to one asserting both federal and state claims. Waiver of the right to arbitrate a federal claim does not extend to later asserted state claims. Some cases speak of revival of a waived right to arbitrate. In these circumstances, however, it is more accurate to say that there was never a waiver of the right to arbitrate the state claims in the first place.

*Id.* at 1260 (internal citations omitted). The Eleventh Circuit went on to state that "knowing that a potential claim may lurk in the shadows of a case is not the same as litigating against a claim that has been brought out into the open in a pleading" and that "[a] defendant is not required to litigate against potential but unasserted claims." *Id.* at 1261. Accordingly, "a defendant will not be held to have waived the right to insist that previously unasserted claims be arbitrated once they are asserted[;]" for, "[a]ny other rule would put a defendant in an awkward if not absurd position." *Id.*

This case is materially indistinguishable from *Collado*. Plaintiffs brought a federal FCA retaliation claim against PPC, which PPC litigated. *See generally* Dkt. 36. Plaintiffs then brought a state law claim for breach of contract in their Second Amended Complaint which was arguably lurking in the shadows of Plaintiffs' Amended Complaint. *Compare* Dkt. 110, with Dkt. 23. PPC now moves to arbitrate this new state law claim. Dkt. 111. The Court consequently declines to hold that PPC "waived the right to insist that [this] previously unasserted claim[]

6

be arbitrated" now. *Collado*, 820 F.3d at 1261. Such a ruling would fly in the face of Eleventh Circuit precedent.

Notwithstanding the foregoing, Plaintiffs contend that *Collado* is non-dispositive. Plaintiffs make three arguments on this point: (1) *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) renders *Collado* inapplicable in determining waiver of arbitration rights; (2) even if *Collado* is applicable following *Morgan*, the instant case is distinguishable; and (3) PPC waived its right to arbitrate Count IV under Florida law, which properly controls this issue following *Morgan*. *See generally* Dkt. 116. The Court will address these arguments in turn.

*Morgan* did not render *Collado* inapplicable by mandating state law control over the issue of waiver. In *Morgan*, the Supreme Court "granted certiorari to decide whether the FAA authorizes federal courts to create . . . arbitration-specific procedural rule[s]" such as a prejudice requirement. *Morgan*, 596 U.S. at 414. The Majority answered this question in the negative and, in so doing, explicitly stated that:

> [w]e decide today a single issue, responsive to the predominant analysis in the Courts of Appeals, rather than to all the arguments the parties have raised. In their briefing, the parties have disagreed about the role state law might play in resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate. The parties have also quarreled about whether to understand that inquiry as involving rules of waiver, forfeiture, estoppel, laches, or procedural timeliness. *We do not address those issues*. The Courts of Appeals, including the Eighth Circuit, have generally resolved cases like this one as a matter of federal law, using the terminology of waiver. For

7

> today, we assume without deciding they are right to do so. We consider only the next step in their reasoning: that they may create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's "policy favoring arbitration." They cannot.

*Id.* at 416–17 (emphasis added). The Supreme Court went on to analyze the subject prejudice-based waiver issue under federal law without ever addressing or alluding to the issue of waving future claims under standard principles of federal waiver law. *Id.* at 417–19. As a result, *Morgan* did not overrule *Collado* or call its reasoning into question unless *Collado* created an arbitration-specific procedural rule. *See Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1292 (11th Cir. 2003) ("While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point.").

*Collado* did not create an arbitration-specific procedural rule. The Eleventh Circuit's "waiver doctrine is typically implicated when parties have 'invoked the litigation machinery' before reversing course and claiming that arbitration was the proper avenue all along." *Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1201 (11th Cir. 2023) (quoting *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018)). This is because, under such circumstances, "the party has acted inconsistently with the arbitration right" it once had. *Warrington v. Rocky Patel Premium Cigars, Inc.*, No. 22-12575, 2023 WL 1818920, at *2 (11th

Cir. Feb. 8, 2023) (internal quotations and citation omitted). *Collado* did not change this reasoning or apply it differently to an arbitration claim. Rather, it applied the same standard waiver inquiry in a situation where one invoked the litigation machinery as to an asserted federal law claim only to be later met with previously unasserted state law claims. *See Collado*, 820 F.3d at 1259–1261. The Eleventh Circuit found that the earlier waiver did not apply to the later asserted state law claims because "a defendant will not be held to have waived the right to insist that previously unasserted claims be arbitrated." *Id.* at 1261 In other words, the *Collado* defendant's litigation of the previously asserted federal law claim was not inconsistent with its arbitration rights concerning the later asserted state law claims. *Id.* (citing *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356 (11th Cir. 1995) in parenthetical for the notion that "[w]aiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate"). *Collado* is still good law following *Morgan*.

The Court is also unpersuaded by Plaintiffs' attempt to distinguish the instant case from *Collado* through *Singh v. MEDNAX Servs. Inc.*, No. 17-61792-CIV, 2018 WL 5098962 (S.D. Fla. Aug. 28, 2018). As an initial matter, the amendment in *Singh* involved adding claims under Title VII of the Civil Rights Act to a complaint which already contained claims under the Equal Pay Act. *Singh*,

9

2018 WL 5098962, at *1. Thus, unlike *Collado*, *Singh* involved no later assertion of a state law claim to supplement a complaint involving only federal law claims. More importantly, though, *Singh* explicitly rejected *Collado* on the grounds that "the new claims were expected by [d]efendants and [were] similar to, and [were] necessarily factually intertwined with, the original claim." *Id.* at *6. This, however, is the exact reasoning that the Eleventh Circuit overturned in *Collado*. *See Collado*, 820 F.3d at 1258 (explaining that the "district court denied the motion to compel arbitration, finding that the addition of the state law claims did not unexpectedly change the scope or theory of the litigation"). The Court declines to follow *Singh*.

Finally, the Court notes that, for the reasons explained above, there is no need to consider whether PPC waived its right to arbitrate Count IV under Florida law. This matter is controlled by federal law under current Supreme Court and Eleventh Circuit precedent. *Morgan*, 596 U.S. at 416–17; *see Amargos v. Verified Nutrition, LLC*, 653 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (explaining that binding precedent dictates that the question of waiver is one of federal law after *Morgan*); *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507 (11th Cir. 1990) ("Our determination of whether S & H waived its right to arbitration, as opposed to whether the contract is void under Alabama law, is controlled solely by federal law."), *abrogated on other grounds by Morgan*, 596 U.S. 411 (2022).

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) PPC's Motion to Compel Arbitration and to Stay Proceedings of Count IV Pending Arbitration (Dkt. 111) is **GRANTED**.

(2) The instant case is stayed only as to Count IV pending resolution of the arbitration process.

**DONE AND ORDERED** at Tampa, Florida, on February 12, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record